**Kurt ERICKSON as Parent and Natural Guardian of Maranda Rae Erickson, a minor Child, and Kurt Erickson, Appellant,**

v.

**Rhonda Jean FULLERTON, Respondent,**

**HealthPartners, o/b/o MinnesotaCare, Respondent.**

No. C8-00-607.

Court of Appeals of Minnesota.

Nov. 28, 2000.

Duane E. Arndt, Kathryn K. Smith, Arndt & Benton, P.A., Minneapolis, MN, (for appellant).

Roger H. Gross, Gislason & Hunter, L.L.P., Minnetonka, MN, (for respondent Fullerton).

Richard M. Hagstrom, Troy J. Seibert, Zelle, Hoffmann, Voelbel & Gette, LLP, Minneapolis, MN; and Anne L. Johnson, HealthPartners, Inc., Bloomington, MN, (for respondent HealthPartners).

Considered and decided by KLAPHAKE, Presiding Judge, LANSING, Judge, and SCHUMACHER, Judge.

## OPINION

LANSING, Judge

The district court granted HealthPartners, on behalf of MinnesotaCare, a statutory cost-of-care lien against an injured minor's settlement with a responsible third party. The minor's guardian challenges the lien's statutory and constitutional validity when applied to proceeds of an injured person who has not been fully compensated. On this record, we decline to reach the constitutional issue, and because Minn.Stat. § 62A.095 (1996), which restricts subrogation rights for "health plans," does not apply to the MinnesotaCare program, we affirm.

## FACTS

Maranda Erickson sustained serious head injuries in a car-pedestrian accident

in December 1997. Her father, Kurt Erickson (Erickson), as guardian, sued the car's driver and submitted a claim to his insurer for underinsured motorist benefits.

At the time of the accident, Maranda Erickson was covered by a health insurance policy issued by HealthPartners through the MinnesotaCare program. The MinnesotaCare program is a subsidized health-care program established by statute. *See* Minn.Stat. § 256L.01–.18 (Supp.1997). To qualify for MinnesotaCare, an applicant must meet certain income and program guidelines and pay sliding-scale premiums.

Erickson, his insurer, and the car's driver negotiated a settlement. Erickson notified HealthPartners of the settlement and petitioned the court for approval of a minor's settlement. In response, HealthPartners filed a lien statement listing more than $63,000 in payments for Maranda Erickson's accident-related medical care. The district court granted HealthPartners's motion to enforce statutory lien rights under Minn.Stat. § 256L.03, subd. 6.

Erickson appeals, contending that (1) the lien statute should not apply because the settlement amount did not fully compensate Maranda Erickson for her accident-related injuries; and (2) the Equal Protection provisions of the Minnesota and United States Constitutions prevent application of section 256L.03, subdivision 6, when the injured person has not been fully compensated.

## ISSUES

I.  Did the district court err in granting HealthPartners' motion to enforce its statutory cost-of-care lien rights against the minor settlement?

II. Is the equal-protection challenge properly before this court?

## ANALYSIS

### I

In his primary argument, Erickson claims the statutory lien rights afforded to HealthPartners through MinnesotaCare in Minn.Stat. § 256L.03, subd. 6 (Supp. 1997), have been limited by Minn.Stat. § 62A.095 (1996), which regulates subrogation rights in a "health plan." Under section 62A.095, no health plan may include subrogation or reimbursement rights that apply before an injured person has received full compensation for his or her injuries. HealthPartners disputes that this restriction on subrogation rights for health plans applies to MinnesotaCare's statutory-lien rights.

■ The interpretation of a statute and its application to undisputed facts raise questions of law this court reviews de novo. *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992). The purpose of statutory construction is to ascertain and give effect to the legislature's intent. Minn.Stat. § 645.16 (1998). When the words of a statute, in their application to an existing situation, are clear and unambiguous, we must give effect to their plain meaning. *Id.*

MinnesotaCare is a state program established to promote access to health care services. Minn.Stat. § 256L.02, subd. 1 (Supp.1997). The statute authorizes the state to contract with managed-care plans to provide a prepaid health plan for health-care services covered under the MinnesotaCare program. *See* Minn.Stat. § 256L.12, subd. 1 (Supp.1997). The state contracted with HealthPartners to provide health-care coverage to Maranda Erickson under the MinnesotaCare program.

Within the chapter establishing and defining the MinnesotaCare program, the legislature provided for a statutory cost-of-care lien. Minn.Stat. § 256L.03, subd. 6. The state and its managed-care plans have a lien on an enrollee's causes of action arising from an occurrence that resulted in MinnesotaCare payments:

When the state agency provides, pays for, or becomes liable for covered health

services, the agency shall have a lien for the cost of the covered health services upon any and all causes of action accruing to the enrollee * * * as a result of the occurrence that necessitated the payment for the covered health services. All liens under this section shall be subject to the provisions of section 256 .015. For purposes of this subdivision, "state agency" includes authorized agents of the state agency.

Minn.Stat. § 256L.03, subd. 6. By specifically incorporating section 256.015, the MinnesotaCare lien provisions mandate that the injured person receive at least one-third of the net recovery. Minn.Stat. § 256.015, subd. 5 (1996). The distribution process in section 256.015 first deducts reasonable costs of collection (including attorney fees), then deducts the "full amount" of public assistance, and then directs that the remaining amount be paid to the injured person. *Id.* Even though the "full amount" of the assistance is deductible, the deduction may not reduce the injured person's guaranteed one-third of the net recovery. *Id.*

■ Erickson argues that application of MinnesotaCare's lien is further restricted by a subrogation provision in chapter 62A, governing accident- and health-insurance policies, that prevents a health plan from enforcing subrogation or similar reimbursement rights unless an insured has made full monetary recovery:

Subdivision 1. **Applicability.** No health plan shall be offered, sold, or issued to a resident of this state, or to cover a resident of this state, unless the health plan complies with subdivision 2.

Subd. 2. **Subrogation clause; limits.** No health plan described in subdivision 1 shall contain a subrogation, reimbursement, or similar clause that provides subrogation, reimbursement, or similar rights to the health carrier issuing the health plan, unless:

(1) the clause provides that it applies only after the covered person has

received a full recovery from another source[.]

Minn.Stat. § 62A.095, subds. 1, 2 (1996).

For three reasons, we reject Erickson's argument. First, section 256L.03, subdivision 6, does not incorporate or refer to section 62A .095, and section 62A.095 does not incorporate or refer to section 256L.03, subdivision 6. *See Northland Country Club v. Commissioner of Taxation,* 308 Minn. 265, 271, 241 N.W.2d 806, 809 (1976) (court cannot supply language that legislature omitted). Second, section 256.015, the distribution formula specifically incorporated into section 256L.03, subdivision 6, conflicts with section 62A.095 by requiring that the *full* amount of public assistance be deducted unless it leaves the injured person with less than a third of the net recovery. *See Minneapolis–St. Paul Sanitary Dist. v. City of St. Paul,* 240 Minn. 434, 437, 61 N.W.2d 533, 536 (1953) (plain language of statute must be given effect; a reviewing court looks outside statute only to resolve an ambiguity, not to create one). And third, MinnesotaCare does not fit within the definition of "health plan" as it is used in section 62A.095. The "health plan" that must make subrogation rights contingent on full monetary recovery is defined as

a policy or certificate of accident and sickness insurance as defined in section 62A.01 offered by an insurance company licensed under chapter 60A * * *.

Minn.Stat. § 62A.011, subd. 3 (Supp. 1997). Section 62A.01 similarly defines "policy of accident and sickness insurance" as any policy insuring against loss or damage by sickness, bodily injury or death by accident. Minn.Stat. §§ 62A.01, subd. 1, 60A.06, subd. 1(5)(a) (1996).

Even if we did not attach significance to the recurring use of the word *policy* and accepted that the certificate issued by MinnesotaCare could be included within the definition of insurance, MinnesotaCare is not "offered by an insurance company" licensed under chapter 60A. *Cf.* Minn.Stat. § 62A.011, subd. 3. The MinnesotaCare

program is offered by the state for the benefit and welfare of its citizens. This plain meaning of MinnesotaCare as a "program," rather than a "health plan," is reinforced by the statutory references within the MinnesotaCare provisions that consistently refer to "MinnesotaCare program"—not "health plan"—to describe MinnesotaCare. *See, e.g.,* Minn.Stat. §§ 256L.02–.05, .07–.12, .17–.18 (Supp. 1997). The MinnesotaCare program does not fall within the narrow definition of "health plan."

■ Although not specifically raised by Erickson, we recognize that in contracting with "managed care plans" such as HealthPartners to provide MinnesotaCare services, the state establishes a connection to a health plan. But we do not believe that those contractual relationships change the analysis. HealthPartners is acting as an authorized agent of the state as allowed under the MinnesotaCare provisions. The State of Minnesota does not become an insurance company offering a "health plan" by virtue of its contractual relationships with providers. *See* Minn.Stat. § 256L.12 (Supp.1997).

■ We also reject Erickson's subsidiary argument that the MinnesotaCare program has been incorporated into chapter 62A through another provision, Minn. Stat. § 62A.045 (Supp.1997). Section 62A.045 governs the rights of the state (and contracting managed-care providers) to recover payments from other health insurers who may have priority for payment of the medical expenses. The language of the section, which grants the state the "rights of payment *and* appeal of an *adverse coverage decision,*" *id.* (b) (emphasis added), does not extend to cost-of-care liens. In addition, this section provides a separate definition of "health plan" that does not include MinnesotaCare. *Id.* (e). By its terms, this provision has no application to determining subrogation rights against a MinnesotaCare enrollee's cause of action.

Because section 62A.095 does not apply to limit the statutory-lien rights of HealthPartners, the district court correctly granted HealthPartners' motion to enforce its lien.

II

■ Erickson also raises an Equal Protection challenge under the United States and Minnesota Constitutions. Although Erickson raised his statutory arguments in his original petition, he did not allege unconstitutionality. Erickson first raised his arguments of unconstitutionality in a supplemental memorandum opposing HealthPartners' motion to enforce the lien. The record contains no evidence that Erickson notified the attorney general of his constitutional challenge in the district court, as required under Rule 24.04 of the Minnesota Rules of Civil Procedure, and the state's agency relationship with HealthPartners does not obviate the notice. *See Appeal of Leary,* 272 Minn. 34, 46–47, 136 N.W.2d 552, 560 (1965) (requiring notice even when state's agent is party if not represented by attorney general). The district court did not address Erickson's constitutional argument in its order. *See State ex rel. Grobe v. Oak Ctr. Creamery Co.,* 269 Minn. 505, 509, 131 N.W.2d 621, 624 (1964) (equating lack of notice in district court to jurisdictional flaw).

■ On appeal, Erickson did notify the attorney general of his claims. We recognize that proper notice in the district court is not an absolute precondition to appellate consideration of important constitutional issues that are adequately briefed by the parties. *See Specialized Tours, Inc. v. Hagen,* 392 N.W.2d 520, 536 n. 15 (Minn.1986) (reviewing constitutionality of statute despite procedural flaws in notice). But we decline to review this constitutional challenge because it was neither adequately raised nor considered in the district court and the appellate record is insufficient for review. *See State v. Odenbrett,* 349 N.W.2d 265, 269 (declining in a criminal case to reach constitutional

issue on privacy rights because not adequately raised or considered in district court and inadequately presented on appeal). Both federal and state equal-protection challenges "begin with the mandate that all similarly situated individuals shall be treated alike * * *." *Scott v. Minneapolis Police Relief Ass'n*, 615 N.W.2d 66, 74 (Minn.2000). The question whether two classes are similarly situated involves consideration of the structure and makeup of the two classes, in light of the purpose of the statute. *State v. Northwestern Preparatory Sch., Inc.*, 228 Minn. 363, 365–66, 37 N.W.2d 370, 371 (1949).

The record in this case is insufficient to establish whether Erickson is similarly situated to one who contracts with a private, nonsubsidized health-care plan. Among other things, the record contains only general statements about MinnesotaCare's premium and financial structure. The record does not establish the specific method or source of funding for Erickson's health-care coverage, the range or basis for MinnesotaCare's premiums, or the premium amount paid by Erickson and the similarity or dissimilarity of these premiums to those that would be paid for a nonsubsidized health-care plan. Without this type of evidence, we cannot adequately address or determine whether Erickson is similarly situated to one who contracts with a private, nonsubsidized health-care plan.

### DECISION

Because section 62A.095 does not limit the cost-of-care lien rights granted to the MinnesotaCare program under section 256L.03, subdivision 6, the district court did not err in granting HealthPartners' motion to enforce these lien rights against the minor settlement.

**Affirmed.**